UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
------------------------------------------------------X
VASO NIKPRELJEVIC
               Petitioner,

  -against-                          CIV. NO. 3:02cv2204 (DJS)

JOHN ASHCROFT,
Attorney General of the United States of
America,
               Respondent.
------------------------------------------------------X


FILED ORIGINAL
US DISTRICT COURT
HARTFORD CT

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S ORDER TO SHOW CAUSE

### INTRODUCTION

On August 29, 2003, this Court remanded Petitioner's proceedings to the Bureau of Citizenship and Immigration Services, formerly the Immigration and Naturalization Service (the "Service") and ordered Respondent to review Petitioner's application for adjustment of status and "issue a written decision discussing the disposition of the application." *Nikpreljevic v. Ashcroft*, 3:02CV2204, at 9 (Aug. 29, 2003, Squatrito, D.J.). On September 21, 2003,[1] the Service issued its "Decision on Application for Status as Permanent Resident" ("the Decision") and denied Petitioner's application. [Ex 1]. Contained within the Decision were facially false statements that exhibited either reckless or malicious indifference to the facts, conclusions of law that receive no support under the statutes of the United States, and evidence of patent violations of the Service's own operating procedures. Therefore, Petitioner respectfully requests that this Court reopen his habeas corpus proceeding pursuant to Fed. R. Civ. P. 60(b), issue a stay of

---

[1] Although the decision is dated September 21, 2003, Petitioner or Petitioner's counsel did not receive a copy of the decision until October 31, 2003. No explanation for the delay was provided.

1

deportation, order the Service to conduct an individualized determination of Petitioner's continued detention, and set a briefing schedule so that Petitioner and Respondent may adequately address the merits (or lack thereof) of the Decision.

## SUMMARY OF THE FACTS

On May 18, 2001, the then-INS "terminated" Petitioner's application to adjust his status. On November 29, 2002, after a routine traffic stop by police, the Service took Petitioner into custody and reinstated a prior order of removal pursuant to Immigration and Nationality Act ("INA") § 241(a)(5). Petitioner has remained in the custody of the Service since that day in various medium and maximum security state-penitentiaries in Connecticut and Massachusetts.

On December 13, 2003, Petitioner filed a Petition for Writ of Habeas Corpus in this Court challenging the validity of the INS' "termination" of Petitioner's I-485 application. On August 29, 2003, the Honorable Dominic J. Squatrito concluded that the INS wrongfully terminated Petitioner's application, and remanded the case to the Bureau of Citizenship and Immigration Services for "review [of] petitioner's application for adjustment of status." *See Nikpreljevic v. Ashcroft*, 3:03CV2204 (D. CT., August 29, 2003) (Squatrito, D.J.).

### Petitioner's I-212 Waiver

Upon remand of his I-485 application to the Service, Petitioner submitted an I-212 waiver of inadmissibility. [Ex. 2]. This application was "feed-in" on September 8, 2003 in New York, NY and a copy was forwarded to Assistant United States Attorney Douglas Morabito at his request. In addition a copy was sent directly to the Service's

2

Hartford office. Mr. Morabito included the I-212 waiver with Petitioner's file when it was remanded to the Service's Hartford office.

In the statement accompanying the waiver, Petitioner explained:

> My entire family lives in the United States. My daughter and fiancée have been suffering greatly without me. My daughter was only 10 months old when I was detain. I have missed her first birthday. I fear that she will suffer extreme hardship if I am sent to Montenegro. My fiancée, who was granted asylum in the U.S. due to the time she spent in a concentration camp in Serbia, cannot return. Therefore, if I am sent back, my fiancée and daughter will remain in the United States and I will be forever separated from them. Moreover, my immediate and extended family depend heavily upon the revenue from the restaurant. One of my brothers was killed in a car accident in 1993, and my parents, who adopted my brother's children, depend upon the revenue from the restaurant.

[Ex. 2].

## The Service's Decision

On September 21, 2003, the Service issued its Decision and denied Petitioner's application. The Decision asserted that Petitioner's application was initially "terminated" because a May 3, 2001 correspondence mailed to Petitioner was returned to the Service by the Post Office marked "Attempted - Not Known." [Ex. 1]. Consequently, pursuant to INS Operating Instructions § 103.2(o), Petitioner's application was automatically terminated because, according to the Service's (false) claim, there was "no other apparent means of communicating" with Petitioner. Notably, the Decision did not explain where this correspondence was sent.

The Decision then stated, without providing an explanation, that pursuant to Section 241(a)(5) of the Immigration & Nationality Act ("INA"), Petitioner is barred from adjustment of status.

3

In addition, the Decision asserted that even if Petitioner's application for adjustment of status was cognizable, Petitioner would still be ineligible for relief because according to the Service's facially false claim, Petitioner did not submit "any evidence of an I-212 waiver application or the approval of such a waiver."

Finally, the Decision, ignoring the fact that Petitioner had an approved waiver of illegal entry pursuant to INA § 245(i), faulted Petitioner for electing "to reenter the United States illegally" and for failing to pursue the "normal visa processing procedure" by remaining in Serbia away from his entire family for the five years it would take to approve his visa application. Therefore, Petitioner's application to adjust his status was denied.

# ARGUMENT

## I.
## PETITIONER IS ENTITLED TO RELIEF FROM THE PRIOR JUDGMENT PURSUANT TO RULE 60(B)(2)

Pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure, Petitioner is entitled to relief from the prior judgment and have this matter reopened so this Court may consider whether the Service is permitted to base its <u>Decision</u> upon errors in law and false statements of facts that rise to the level of denying due process. Rule 60(b) provides, in part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b).

Fed. R. Civ. Proc. 60(b).

Here, Petitioner submits the Service's <u>Decision</u> to deny Petitioner's application to adjust his status. As this evidence was received over two months after the Judgment from this Court, it could not have been discovered within the ten-day period to move for a new trial under Rule 59(b). Therefore, Petitioner is eligible for relief under Rule 60(b)(2).

5

## II.

## PETITIONER IS ENTITLED TO A STAY OF DEPORTATION

There are four relevant criteria in considering whether to issue a stay of an order of removal: 1) a likelihood of success on the merits, 2) that irreparable harm would occur if a stay is not granted, 3) that the potential harm to the movant outweighs the harm to the opposing party if the stay is not granted, and 4) that the granting of a stay would serve the public interest. *See Mohammed v. Reno*, 309 F.3d 95, 101-02 (2d Cir. 2002); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Sofinet v. INS*, 188 F.3d 703, 706 (7th Cir. 1999); *Artukovic v. Rison*, 784 F.2d 1354, 1355 (9th Cir. 1986); *Luke v. Reno*, 2001 U.S. Dist. LEXIS 7748 (N.J.D.C. 2001). However, the Second Circuit has explicitly found "'The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[] will suffer absent the stay. Simply stated, more of one excuses less of the other.'" *Mohammed*, 309 F.3d at 101 (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

Here, Petitioner is likely to succeed on the merits, will suffer irreparable harm if removed, the harm to Respondent is minimal, and the stay will serve the public interest.

### A.    Likelihood of Success on the Merits

The Service's <u>Decision</u> errs as a matter of fact and law, fails to consider or even acknowledge the existence of validly submitted applications, and provides indisputable evidence that the Service violated its own procedures in terminating Petitioner's application to adjust his status.

1.  <u>The Decision Falsely Stated That Petitioner Did Not Submit An I-212 Application</u>

In a frightening display of reckless indifference to the facts, the <u>Decision</u> erroneously stated that Petitioner is ineligible for adjustment of status because he did not submit "any evidence of an I-212 waiver application or the approval of such a waiver." In fact, Petitioner did submit an I-212 waiver. [Ex. 2]. This waiver was feed-in on September 8, 2003 in New York, NY. The Service's statement that Petitioner did not submit an I-212 waiver is stunningly indefensible in light of the fact that AUSA Morabito submitted this waiver application to the Service on behalf of Petitioner when the file was sent from the United States Attorney's Office to the Hartford BCIS office. Petitioner mailed a copy of the I-212 waiver directly to the Service's Hartford office as well. Amazingly, the Service still failed to consider this waiver and asserted that no such waiver was submitted.

It is well-established that failure to exercise discretion is reversible error. *See INS v. Cardoza-Fonseca*, 107 S. Ct. 1207, 1219 (1987) ("The distinction between the mandatory and discretionary parts of the statute has practical significance. What the Attorney General and his delegates must exercise is discretion.") (citations omitted); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). ("failure to exercise discretion is a reversible error."); *Asimakopoulos v. INS*, 445 F.2d 1362, 1365 (9th Cir. 1992) ("The Board's failure to exercise discretion is reversible error."); *Fesseha v. INS*, 1999 U.S. App. LEXIS 20852, *4 (10th Cir. 1999) ("When the regulations grant the attorney general discretion, the attorney general must to exercise its discretion."); *Kazlauskas v. INS*, 46 F.3d 902, 905 (9th Cir. 1995) ("If an applicant can show eligibility for asylum, then the INS must exercise its discretion to determine if the applicant is

entitled to asylum."); *Doe v. United States*, 54 Fed. Cl. 404, 405 (2002) (when congress divest an agency discretion, the agency "must exercise its discretion" when deciding matters before it.); *Nikpreljevic*, 3:02CV2204 at 7 ("[t]he fact that INS has discretion in the ultimate decision whether to grant [legal permanent resident status is simply irrelevant to the question of whether it has discretion to refuse to act on Plaintiffs' applications.") (*quoting Yu*, 36 F. Supp at 931).

Therefore, the Service failed to properly consider an application before them and as such, violated this Court's August 29, 2003 order that they properly adjudicate Petitioner's application to adjust his status, a part of which was his I-212 waiver application.

2. The Decision Established That the Service Violated Its Own Procedures In Terminating Petitioner's Green-Card Application

According to the Decision, the Service sent Petitioner a letter on May 3, 2001 with a request for a I-212 waiver. However, this letter was returned by the Post Office "Attempted-Not Known". Therefore, the Decision asserts, pursuant to INS Operating Instructions ("OI") 103.2(o), Petitioner's application was deemed abandoned and action was terminated. However, a close analysis of OI 103.2(o) indicates that the INS utterly failed to follow its own procedure. OI 103.2(o) states:

> [W]henever the Service determines that additional information, documents or other evidence, or that the applicant's or petitioner's appearance for interview is necessary for an adjudication of an application or petition in the Examinations activity, and request therefor, mailed to the applicant or petitioner at the address last furnished by him, is returned to the Service by the postal authorities as undeliverable, the application or petition shall be deemed to have been abandoned and action thereon shall be terminated

8

automatically *if there is no other apparent means of communicating with him. ...*

When an application or Petition is referred to the Investigations *after exhausting all possible leads that there are no apparent means of communicating with the applicant or petitioner,* the automatic termination shall be considered on the basis of the investigative report in the file and the record so noted by the adjudicator as provided below. ...

In any case which is automatically terminated for either of the reasons described above, *an 8" x 10 1/2" sheet of bond paper shall be attached to the top of the record proceedings endorsed "Action of Form I-(No.) automatically terminated pursuant to OI 102.2(o)."* The endorsement shall be dated and the actual or facsimile signature of the official who would sign a denial order shall be affixed. ...

*Such termination shall be without prejudice to renewal of the application or petition upon written request of the applicant or petitioner.*

OI 103.2(o) (emphasis added).

Notably, the Decision does not provide any documentation or explanation as to where this May 3, 2001 letter was mailed. The address provided to the Service by Petitioner was 208 Harris Road, Bedford Hills, New York 10507. [Ex. 3]. In addition, Petitioner provided the Service with the telephone number of 914-241-4320. [Ex. 3]. At the time this letter was sent, both the address and telephone number were valid contact information for Petitioner. [Ex. 4]. If the Service had followed its own procedure, either by attempting to call Petitioner or resend the letter, Petitioner would have received this request. In addition, Petitioner provided the address and telephone number of his attorney. [Ex. 5]. That information was also valid at the time of the May 3, 2001 letter.

Nonetheless, the INS apparently made no efforts whatsoever to contact Petitioner other than a single attempt mentioned in the Decision. The Service did not attempt to resend the letter, call Petitioner, write or call Petitioner's counsel, or contact any of Petitioner's immediate family members, including his mother who submitted the family

9

petition on his behalf and maintained the same address and telephone number from her arrival in the United States until 2002. [Ex 6]. None of this was attempted despite their own operating instructions that require "exhausting all possible ... means of communicating with the applicant or petitioner." OI 103.2(o). It does not require an imaginative mind to realize that one single attempt at mailing a letter does not constitute exhaustion of all possible means of communication.

In addition, even assuming the Service had a basis to terminate the application (although they did not), they failed to properly indicate this on the file. Again, their operating instructions require an 8" x 10 1/2" sheet of bond paper shall be attached to the top of the record proceedings endorsed "Action of Form I-(No.) automatically terminated pursuant to OI 102.2(o)." The service entirely failed to follow their own operating procedure, forcing Petitioner, this Court and even AUSA Morabito to only guess as to the basis of the termination in Petitioner's initial habeas corpus petitioner. *See Nikpreljevic*, 3:02CV2204 at 5 ("the administrative record is without any detail as to the reason for the termination of petitioner's adjustment of status application"); Respondent's Response to Petition for Habeas Corpus, at 5 n. 3 ("[i]t is not entirely clear weather petitioner's I-485 application was denied or whether it was terminated for some other reason.").

As a consequence of the INS violating their own procedure, Petitioner has spent the past year imprisoned several hundred miles from his fiancée and new-born daughter. As a consequence, Petitioner has missed his daughter's first birthday, first step, and first word. As a consequence, Petitioner's business is near collapse. As a consequence,

10

Petitioner fears for his safety every day and night as he is imprisoned in a medium security state penitentiary among violent criminals.[2]

3. The Decision Exceeded the Bounds of Its Authority In Invalidating a Lawfully Enacted Statute

The Service patently erred in basing its decision to deny Petitioner's I-485 application, in part, upon Petitioner's failure to pursue the "normal visa processing procedure" by electing to reenter the United States without inspection. By doing so, the Service maliciously and without any authority nullified INA § 245(i), which explicitly waives an illegal re-entry and permits the applicant to remain in the United States during the time that the Service considers his application to adjust status. In other words, Petitioner was not required follow the "normal visa processing procedure" because he chose to be with his family rather than in a war-torn nation where he feared for his safety. More importantly, Petitioner was not required to follow the "normal visa processing procedure" because Congress expressly permitted him to follow an alternative procedure. Simply put, an employee of the Service has no legal or moral authority to overrule a Congressional act. For this reason alone, the Decision cannot be permitted to stand.

---

[2] The Service's position is that "detention" is not punishment, but rather civil confinement. However, as the Third Circuit noted, "an alien whose detention occurs in a maximum security federal prison may be forgiven for wondering when his punishment stopped and detention began." *Chi Thon Ngo v. INS*, 192 F.3d 390, 397-98 (3d Cir. 1999).

11

4. <u>The Decision Contained Erroneous Conclusions of Law Without Providing a Basis For Such Conclusions in Violations of This Court's August 29, 2003.</u>

At the time the Service wrongfully terminated Petitioner's green-card application, they had not reinstated Petitioner's prior order of removal. As such, it cannot now, after this Court has already determined that the initial termination was wrongful, assert that reinstatement acts as a bar. In other words, the Service cannot "bootstrap" its way into finding Petitioner ineligible to adjust his status. The prior order of removal was not reinstated until *after* the wrongful termination -- and thus, had the Service properly processed Petitioner's I-485 application in the first instance, Petitioner's prior order would have never been reinstated. The Service cannot benefit from violating its own procedures and retroactively apply the reinstatement provisions to Petitioner's initial application that was wrongfully terminated.

Even assuming *arguendo*, that the Service can retroactively apply the reinstatement provisions to Petitioner's initial green-card application (although they cannot), Petitioner is nonetheless statutorily eligible to adjust his status with a waiver of illegal entry under INA § 245(i) notwithstanding the reinstatement of removal provision, INA § 241(a)(5).

> INA § 241(a)(6), 8 U.S.C. 1231(a)(6) states:
>
> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, *the alien is not eligible and may not apply for any relief under this Act*, and the alien shall be removed under the prior order at any time after the reentry.

*Id.* (emphasis added).

Under the Service's unsupported assertion, Petitioner is subject to being deported because he is not eligible to adjust his status, and he is not eligible to adjust his status because he is subject to being deported. The Service has not cited to a *single* authority that establishes that because Petitioner is subject to reinstatement of a prior order of removal, he is ineligible to adjust his status. To require Petitioner to disprove a non-existent exception to the rule that Petitioner is entitled to adjust his status is a farcical demand that runs contrary to centuries of jurisprudence and the legal foundations of a democratic government.

One federal court has directly addressed the interaction of INA § 245(i), which allows illegal entrants to adjust status, with INA § 241(a)(5), which authorizes removal based on prior removal, deportation or exclusion orders. In *Hernandez v. Reno*, 86 F. Supp. 2d 1037 (W.D.Wa. 1999), as here, the petitioner entered the U.S. without inspection after being deported on a prior occasion, filed to adjust his status and paid the additional fee of $1,000 to waive the illegal entry under INA §245(i). *Id.* at 1038. The INS denied his application to adjust despite the fact that a valid relative petition was filed on his behalf and sought to reinstate the prior order of removal.

The *Hernandez* Court harmonized the apparently contradictory provisions of INA §§ 245(i) and 241(a)(5), by holding that the fact that the petitioner "may be deportable under a separate provision of the of the INA does not affect his clear entitlement to apply for adjustment of status under section 245(i)." *Hernandez v. Reno*, at 1041.

In its thorough statutory interpretation the court noted that Congress amended INA § 245(i), 8 U.S.C. 1255(i), *after* the passage in 1996 of IIRAIRA (in 1997, and has further amended 245(i) since then). The post-IIRAIRA amendments "conspicuous[ly]

omitted] of language barring aliens ... from adjustment under Section 245(i) suggest[ing] that Congress intended adjustment to be available in these circumstances...." *Id.* at 1041. The court granted the writ and remanded the matter to INS for adjustment of status adjudication.

Moreover, the fact that the §1231(a)(5) states that an alien "may not apply for any relief under this Act" does make Petitioner ineligible to adjust his status. Petitioner did not apply for any relief from deportation. He applied to adjust his status three years prior to the INS reinstating its prior order and thus, the language of 8 U.S.C. §1231(a)(5) cannot be a bar. *See Hernandez*, 86 F. Supp. 2d at 1041 (because an applicant applied to adjust his status prior to the INS reinstating a prior order of removal, it is not deemed an application for relief and §1231(a)(5) cannot be a bar.).

Finally, the rule of lenity *requires* the construction of "any lingering ambiguities in deportation statutes in favor of the alien." *Cardoza-Fonseca*, 480 U.S. at 449; *see also INS v. Errico*, 385 U.S. 214, 225 (1966) ("Even if there were some doubt as to the correct construction of the statute [INA § 241(f)], the doubt should be resolved in favor of the alien."); *Rosario v. INS*, 962 F.2d 220, 225 (2d Cir. 1992) ("in light of the harshness of deportation, ambiguous deportation provisions should be construed in favor of the alien"); *Lennon v. INS*, 527 F.2d 187, 193 (2d Cir. 1975) ("It is settled doctrine that deportation statutes must be construed in favor of the alien."); *Vargas v. INS*, 938 F.2d 358, 363 (2d Cir. 1991) (same).

Therefore, the principles of statutory interpretation would bar the Service from the tremendous leap of logic that because, according to the Service, Petitioner is deportable under one section of the INA, he is ineligible to adjust his status under another section.

Such a harsh reading of the statute violates the unambiguous holding of the Supreme Court and Second Circuit and cannot be upheld.

**B.    Irreparable Harm Would Occur if a Stay is Not Granted**

If deported, Petitioner would suffer irreparable harm. First, he would be separated from his fiancée and daughter, his mother, brother, cousins, nieces, nephews, aunts, uncles and other extended family. In addition, he would no longer be able to operate the family restaurant that provides support for his immediate and extended family. This could have the effect of putting the restaurant out-of-business as it is already in danger of collapsing with Petitioner in detention. Moreover, he would be returned to a country where he significantly fears for his safety. And finally, any hope for relief in this Court or further administrative proceedings may be extinguished as be moot. Consequently, removing Petitioner prior to the resolution of his habeas corpus petition and any succeeding judicial or administrative review would result in irreparable harm.

**C.    Potential Harm To Petitioner Outweighs The Harm To Government If The Stay Is Not Granted**

The harm Petitioner faces if removed significantly outweighs any harm that the Government may suffer if the stay is granted. The only potential harm the government may suffer is the continued cost of detaining Petitioner. However, if the stay is granted, Petitioner would be eligible for release, thus relieving the Government of the continued cost. *See Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003) ("[W]here a court issues a stay pending review of an administrative removal order, the alien continues to be detained under [8 U.S.C. § 1226] until the court renders its decision.").

### D.     Granting the Stay Would Benefit Society

A stay of removal would benefit society in both generalized and specific terms. First, a stay would affirm the right of members of society to judicial review of agency decisions that violate the Constitution. Second, it would permit Petitioner to seek release from detention and resume his role as a productive community member. He has an unblemished work history as a restaurateur. He has worked full time at Al Laghetto as a cook as well as operating the business aspect of the restaurant. He donates generously to the local services like the police and fire departments, and is extremely active within his church. His compassion for those around him, and consistent work towards improving his neighborhood remain unquestioned. It is for this reason that so many members of his community have reached out and offered to assist in obtaining Petitioner's release from detention. [Ex. 7].

\*\*\*

For these reasons, Petitioner is entitled to a stay of removal pending the resolution of his habeas corpus Petition.

### III

### THIS COURT SHOULD ORDER RESPONDENT TO CONDUCT AN INDIVIDUALIZED BOND HEARING

In conjunction with issuing a stay of removal, this Court should order Respondent to conduct an individualized bond hearing. Under 8 U.S.C. 241 (a)(1)(B)(ii), §1231(a)(1)(B)(ii), an alien is not subject to a final order of removal if "the removal order is judicially reviewed and if a court orders a stay of the removal of the alien." In such

instances, the removal order does not become final until the "date of the court's final order." *Id.* If the removal order is not final, then the alien is detained pursuant to INA §236, 8 U.S.C. §1226. *See Wang v. Ashcroft*, 2003 U.S. App. LEXIS 2086 (2d. Cir. 2003) ("where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the court renders its decision."); *Patel v. Zemski*, 275 F.3d 299, 304 n.3 (3d. Cir. 2001) (where a party remains in detention following an order of removal, but a stay of removal has issued, INA §236(c) governs).

According to the INA §236, 8 U.S.C. §1226, Petitioner is entitled to be released on bond, including during the period of time that a case is subject to judicial review. Specifically, the statute reads:

> an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
> (1) may continue to detain the arrested alien; and (2) may release the alien on-- (A) bond of at least $ 1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole....

INA § 236(a), 8 U.S.C. § 1226(a).

Therefore, as this Court noted, upon the issuance of a stay, it would be appropriate for the Court to order that there be an individualized bond hearing. *See Nikpreljevic*, 3:02CV2204 at 8-9. For this reason, this Court is respectfully urged to issue an order directing the Service to conduct an individualized determination of Petitioner's flight risk and danger to the community.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court (1) Grant Petitioner's Rule 60(b) motion and reopen the habeas corpus proceedings; (2) Grant Petitioner's request for a stay of deportation/removal; (3) Order Respondent to conduct an individualized bond hearing for Petitioner; and (4) set a briefing schedule so that Petitioner and Respondent may thoroughly address the merits of the underlying claim.

Dated: New York, New York
      November 10, 2003

Respectfully Submitted,

Theodore N. Cox
Attorney for Petitioner

401 Broadway, Suite 701
New York, NY 10013
Phone: (212) 925-1208
Fax: (212) 925-5188

## AFFIRMATION OF SERVICE

THEODORE N. COX, being an attorney duly admitted to the practice of law in the States of New York and in the courts of the United States does hereby affirm under penalties of perjury that the following is true:

On November 11, 2003, I placed a true copy of the attached memorandum in a secure envelope and mailed the same via FEDERAL EXPRESS next-day overnight mail to the following address:

>Office of the United States Attorney
>District of Connecticut
>450 Main Street, Room 328
>Hartford, CT 06103
>
>John Ashcroft
>Attorney General of the United States
>10th St. & Constitution Avenue, NW
>Washington, D.C. 20530

Dated:    New York, New York
          November 11, 2003

_____
THEODORE N. COX, ESQ.
401 Broadway, Suite 701
New York, NY 10013