UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

VASO NIKPRELJEVIC          :

      Petitioner,          :          CIV. NO. 3:02cv2204(DJS)

      v.          :

JOHN ASHCROFT, United          :
States Attorney General          :          February 27, 2004

      Respondent.          :

### RESPONSE TO THE PETITION FOR A WRIT OF HABEAS CORPUS

Respondent, John Ashcroft,[1] respectfully submits the instant response to petitioner's petition for writ of habeas corpus. For the reasons set forth below, petitioner's habeas claims should be denied.

### BACKGROUND

Petitioner, Vaso Nikpreljevic, born in Yugoslavia and a citizen of Montenegro, entered the United States on August 11, 1994, without authorization. (See Exhibit A, Notice to Applicant, dated August 11, 1994). Specifically, petitioner entered the United States without a valid immigrant visa, reentry permit, border identification crossing card, or other valid entry document. (See Exhibit B, Record of Deportable/Inadmissible Alien, dated

---

[1] On March 1, 2003, the Immigration and Naturalization Service ("INS") was abolished and its functions transferred to three bureaus within the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2178. The enforcement functions of INS were transferred to the Bureau of Immigration and Customs Enforcement ("BICE") while its service functions were transferred to the Bureau of Citizenship and Immigration Services ("BCIS").

November 29, 2002) As a consequence, petitioner was placed in exclusion proceedings. At that same time, petitioner applied for asylum and withholding of exclusion. The Immigration Judge ("IJ") denied both of petitioner's applications. (See Exhibit C, Oral Decision of Immigration Judge, dated November 18, 1994) The Board of immigration Appeals ("BIA") affirmed the IJ's decision. (See Exhibit D, Decision of Board of Immigration Appeals, dated March 2, 1995) A final order of exclusion was entered against petitioner in 1995, and he was subsequently deported on March 2, 1995. (See Exhibit B)

Prior to his attempted illegal entry into the United States, in 1992, petitioner's father filed an alien relative petition ("I-130 Petition") on behalf of his son.[2] That petition was approved on April 8, 1992. At that time there was not a current visa number available to petitioner and as such he was not able to adjust his status.

In January, 1997, petitioner unlawfully reentered the country without inspection in Detroit, Michigan. (See Exhibit E, United States Department of Justice Affidavit, dated November 29, 2002) Specifically, petitioner stated that he entered the United States in a van at the Canadian border by using another person's passport. (See id.) On April 21, 1999, petitioner filed an application to

---

[2]According to petitioner, his father died and thereafter his mother filed a petition for alien relative on behalf of her son.

adjust his status ("I-485 Application") claiming that he was entitled to adjust to permanent resident status because he had an immediately available visa number approved. (<u>See</u> Exhibit F, Petitioner's Application to Register Permanent Residence or Adjust Status)  As part of his I-485 Application, petitioner also filed an I-485 Supplement A seeking to waive the consequences of his entry without inspection into the United States by paying an additional $1,000.00 pursuant to Immigration and Nationality Act ("INA") § 245(i).  On May 18, 2001, petitioner's I-485 Application for adjustment of status was terminated. (<u>See</u> Exhibit G, Memorandum of Creation of Record of Lawful Permanent Residence)

Petitioner is engaged to Elizabeta Markvukaj, an Albanian citizen granted asylum in the United States in the past year. Petitioner also has a daughter, Nina Nikpreljevic, born January 17, 2002, in Westchester, New York.  Petitioner remained illegally in the United States until November 29, 2002, when he was taken into custody by the Glastonbury Police Department.  At that time, the INS reinstated petitioner's prior order of exclusion in accordance with INA § 241(a)(5).  (<u>See</u> Exhibit H, Notice of Interim Decision to Reinstate Prior Order)

Petitioner thereafter filed a petition for writ of habeas corpus and a motion for stay on December 16, 2002, seeking a stay of all efforts to remove him.  On August 29, 2003, the Court granted in part and denied in part petitioner's habeas petition.

3

Specifically, the Court concluded that petitioner's continued detention was lawful but that his application to adjust status was remanded to INS for adjudication.

On September 21, 2003, the INS issued a decision ("Decision") denying petitioner's application to adjust status because he is statutorily barred from such adjustment pursuant to Immigration and Nationality Act ("INA") § 241(a)(5).  (See Ex. I, Decision on Application for Status as Permanent Resident).  The Decision went on to state that even if petitioner was statutorily eligible to adjust his status, his conduct in illegally entering the United States would warrant against granting him permanent resident status.  (See id.)

On November 21, 2003, the INS issued an amended decision denying petitioner's application for adjustment of status ("Amended Decision").  (See Ex. J, Notice of Decision, Amended).  In the Amended Decision, the INS explained that petitioner's application to adjust status was deemed terminated because correspondence sent to him requesting that he provide an approval notice for an I-212 waiver was returned by the post office "Attempted - Not Known." (See id.)  In addition, the Amended Decision further explained that because there were no other means by which to communicate with petitioner, INS operating instructions deemed his application abandoned and terminated.  (See id.)  Finally, the Amended Decision concluded that "[i]n accordance with Section 241(a)(5) of the [INA,

4

petitioner is] statutorily barred from adjustment of status or any relief under the Act. Accordingly, [petitioner's] application for adjustment of status and the relating [I-212 waiver were] denied." (Id.)

On November 12, 2003, petitioner filed a motion to reopen his habeas petition, a motion for a stay of his removal and a request for a bond hearing. On November 21, 2003, the Court granted petitioner's motion to reopen, stayed his removal pending further decision of the Court and ordered that the INS conduct a bond hearing by December 19, 2003. On November 26, 2003, an IJ conducted a bond hearing and petitioner was released that day on bond.[3]

Petitioner requests that the Court order the INS or alternatively, an IJ, to adjudicate his application to adjust status nunc pro tunc relating back to before its original termination on May 18, 2001. He also requests a ruling from the Court that the reinstatement provisions of INA § 241(a)(5) do not statutorily bar his application to adjust status. For the reasons set forth below, the relief sought by petitioner should be denied.

## ARGUMENT

At the outset, Respondent notes that, to the extent petitioner

---

[3]The IJ originally declined to hold a bond hearing concluding that he lacked jurisdiction because the district court's order was directed to BICE and not the Executive Office of Immigration Review ("EOIR"). The Court issued an amended order and a bond hearing was held that same afternoon.

is challenging reinstatement of his order of removal, such a challenge is not properly before this Court. That is, such a challenge to the propriety of petitioner's reinstatement order can only be brought on a Petition for Review at the Court of Appeals and is limited to 8 C.F.R. § 241.8(a)(1) - (3). See 8 U.S.C. § 1252(g). Consequently, to the extent petitioner challenges the validity of his reinstated order, the Court is without jurisdiction and that claim should be transferred to the Court of Appeals.

## I.   Petitioner Is Ineligible To Adjust His Status Under 8 U.S.C. Section 1255.

Petitioner asserts that, because he paid an additional $1,000.00 pursuant to 8 U.S.C. § 1255(i) to waive the consequences of his entry without inspection, he is entitled to adjust his status as a matter of law. Petitioner's contention is without merit.[4]

---

[4]Due to the limited scope of habeas corpus review, this Court does not have subject matter jurisdiction to review the purely discretionary determination of the INS to deny an alien's application to adjust status. The sort of fact-intensive review is vastly different from what the habeas statute plainly provides: review for statutory or constitutional errors. See Sol v. Immigration and Naturalization Service, 274 F.3d 648 (2d Cir. 2001). The applicable statute precludes the Court from reviewing discretionary decisions of the Attorney General. See 8 U.S.C. § 1252(a)(2)(B)(ii) (no court shall have jurisdiction to review a discretionary determination of the Attorney General); see also Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001)(explaining that "federal jurisdiction over § 2241 petitions does not extend to review of discretionary determinations by the IJ and the BIA"). Consequently, to the extent that the Amended Decision and Decision denied petitioner's application to adjust status as an exercise of discretion, the Court lacks jurisdiction to review such a determination.

Any alien physically present in the United States, except for those restricted or ineligible aliens listed in 8 C.F.R. § 245.1(b) & (c), may "apply" for adjustment of status.  See 8 C.F.R. § 245.1(a).  Because petitioner entered the United States without inspection, he is a restricted alien under 8 U.S.C. § 245.1(b)(1). As such, petitioner is ineligible to "apply" for adjustment of status unless he can satisfy the requirements contained in 8 U.S.C. § 1255(i) and 8 C.F.R. § 245.10.

Under 8 U.S.C. § 1255(i)(1), an alien who entered the United States without inspection, who is the beneficiary of an alien relative petition "may" apply to the Attorney General for adjustment of his status if he remits an additional $1,000.00 fee. Upon receipt of such an application and the $1,000.00 fee, the Attorney General "may" adjust the status of an alien if the alien is eligible to receive an immigrant visa and is admissible to the United states for permanent residence and an immigrant visa is immediately available to the alien at the time the application is filed.  The alien must also satisfy 8 C.F.R. § 245.10, which states that a qualified alien "may" apply for adjustment of status if the alien meets the requirements of paragraphs (b)(1) through (b)(7) of 8 C.F.R. § 245.10.

Here, all the filing of the I-485 Supplement A (8 U.S.C. § 1255(i), INA § 245(i) waiver) does for petitioner is remove one bar to his application to adjust status, i.e., his entry without

7

inspection.    Petitioner  still  must  satisfy  the  requirements
contained  in  8  C.F.R.  §  245.10(b).    One  requirement  is  that
petitioner  establish  that  at  the  time  he  filed  his  I-485
Application  there  was  a  visa  number  available  for  him.    In
addition,  petitioner  must  establish  that  he  is  not  inadmissible
under  8  U.S.C.  §  1182.  Here,  it  appears  that  petitioner  is  in  fact
inadmissible  to  the  United  States  for  at  least  two  independent
grounds:  (1)  he  has  been  unlawfully  in  the  United  States  for  over
one  year;  8  U.S.C.  §  1182(9)(B)(i)(II)[5]  and  (2)  he  was  previously
excluded  and  deported  from  the  United  States  on  March  12,  1995.
See  8  U.S.C.  §  1182(9)(C)(i)(II).[6]

Petitioner  asserts  that  he  was  not  required  to  submit  an
approval  notice  for  an  I-212  waiver  despite  his  prior  exclusion  and
deportation  on  March  12,  1995.    To  support  this  conclusion,
petitioner  reasons  that,  because  his  previous  exclusion  and
deportation  only  barred  his  readmission  for  one  year,  and  because
he  remained  outside  the  United  States  for  four  years,  his  prior
exclusion  and  deportation  does  not  render  him  inadmissible  under  8
U.S.C.  §  1182  and  thus  he  did  not  and  (still  asserts  that  he  does
not)  need  an  approved  I-212  waiver.    Petitioner  misunderstands  the

[5]Petitioner does not address his unlawful presence time in
his brief.

[6]Respondent notes that there could be other bases of
inadmissibility which would also bar petitioner's adjustment of
status.

8

clear import of 8 U.S.C. § 1182.

Specifically, the fact that petitioner was barred from readmission into the United States for only one year does not mean that he can illegally reenter the United States without permission. While it may be true that petitioner would not need special permission to apply for advanced entry under 8 C.F.R. § 212.2(a) because he stayed out of the country for over one year, he still cannot illegally reenter. Moreover, petitioner's illegal reentry, as well as his prior order of exclusion and deportation renders him inadmissible under § 1182(9)(C). The fact that he filed a § 245(i) waiver for his entry without inspection does not alter this result. Again, a close reading of § 245(i) reveals that an alien still must establish that he is "admissible" to the United States even after obtaining a § 245(i) waiver. See 8 U.S.C. § 1255(i)(2)(A).

Even assuming petitioner had no statutory bars to his adjustment of status (which respondent maintains he does), all this would have done was allow him to apply for adjustment of status with the Attorney General back in 1999. There is no authority cited by petitioner which would support an order from the Court compelling the Attorney General to adjust his status.[7] Nor is there any authority requiring the Attorney General to adjudicate

---

[7]Indeed, this is a purely discretionary determination on the part of the Attorney General and thus it is not reviewable by the Court. See 8 U.S.C. § 1252(a)(2)(B)(ii).

his application to adjust status nunc pro tunc.[8]

In support of an order requiring a nunc pro tunc adjudication, petitioner claims that he was unaware that his initial application to adjust status was terminated because the INS failed to follow its own regulations and operating instructions regarding termination of applications. Specifically, petitioner asserts that the INS failed to comply with section 103.2(o) of the Immigration and Naturalization Service - Operating Instructions ("INS OI") which requires certain steps be taken prior to the automatic termination of an application.[9] Petitioner also maintains that the INS did not give him an opportunity to provide missing information needed for a full an fair adjudication of his application to adjust status as required under 8 C.F.R. § 103.2.[10]

---

[8]Notably, however, even if the Attorney General did adjudicate petitioner's application to adjust status nunc pro tunc, he still cannot show that he is eligible to adjust his status absent an approved I-212 waiver.

[9]INS OI § 103.2(o) provides that when mail is returned as "undeliverable" and there are no other means of communicating with an alien regarding an application, the application is deemed to be abandoned and is thereafter automatically terminated. The operating instruction goes on to require that "[i]n any case which is automatically terminated for either of the reasons described above, an 8" by 10 ½" sheet of bond paper shall be attached to the top of the record of proceedings endorsed 'Action on Form I-(No.) Automatically terminated pursuant to OI 103.2(o)." INS OI § 103.2(o). Here, the administrative record does not reveal compliance with the above INS OI.

[10]Section 103.2(b)(8) provides that an alien be given twelve weeks to respond to a request for evidence. Petitioner also maintains that the INS violated 8 C.F.R. § 245.2(5)(i), 8 C.F.R. § 103.5a and 8 C.F.R. § 103.2(19).

At most the INS was negligent, [which Respondent does not concede], in allegedly not following its own regulations and operating instructions regarding service and the termination of applications.  Notably, however, such alleged negligence on the part of the INS does not provide any authority for a nunc pro tunc adjudication of petitioner's application to adjust status. Essentially, petitioner claims that the INS should be estopped from denying his application to adjust status based on his reinstatement order due to the INS's alleged failure to follow its own regulations and operating instructions.  Petitioner is attempting to use the doctrine of equitable estoppel to make an end run around his reinstated order.  Petitioner has not, and can not meet his burden of proving such a claim.

Equitable estoppel "is not available against the government except in the most serious of circumstances, and is applied with the utmost caution and restraint." Rojas-Reyes v. INS, 235 F. 3d 115, 126 (2d Cir. 2000) (citations omitted).  Thus, equitable estoppel will not lie unless petitioner "can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct." City of New York v. Shalala, 34 F.3d 1161, 1168 (2d Cir. 1994).

Petitioner has not alleged any misrepresentation upon which he relied, nor has he identified any affirmative misconduct on the

part of the INS.  The INS's alleged failure to follow its own regulations and operating instructions regarding the termination of his application does not amount to the type of affirmative misconduct that warrants estoppel.

Moreover, petitioner's claim that the foregoing regulations and INS operating instruction were promulgated to protect a fundamental right, i.e., procedural due process, is not supported by the record.  See Waldron v. INS, 17 F.3d 511, 518 (2d Cir. 1994).  Therefore, as stated throughout this memorandum of law, petitioner is ineligible to adjust his status independent of the reinstated order and thus he cannot show any prejudice.  That is, because petitioner does not have an approved I-212 waiver, he would not be eligible to adjust his status even if the INS had not reinstated his prior order.  Consequently, even a nunc pro tunc adjudication of petitioner's application to adjust status would be denied.

Nonetheless, as discussed below, because petitioner's prior order of exclusion has been reinstated, he is no longer eligible for, and may not apply for, any relief (including adjustment of status) and thus his petition for writ of habeas corpus should be denied as a matter of law.

## II.  Because Petitioner Is Under A Final Order of Removal Pursuant To 8 U.S.C. Section 1231(a)(5), He Is Not Eligible For Any Relief.

Petitioner's reinstatement of his prior order of deportation

bars him from obtaining any relief and thus his habeas petition should be denied.[11]

Here, petitioner asserts that, notwithstanding his prior exclusion and deportation from the United States, he is entitled to adjust his status under 8 U.S.C. § 1255 because an alien relative petition filed on his behalf was approved in 1992. Essentially petitioner seeks to have the Court issue an order requiring the INS to find that he is eligible for adjustment of status. In support of this extraordinary relief, petitioner offers nothing more than his own conclusory and uncorroborated claim that he is eligible for an adjustment of status because he has an approved visa number available. Simply put, petitioner is wrong. Because he illegally reentered the United States without inspection having been previously excluded and deported, he is ineligible for adjustment of status under 8 U.S.C. § 1255 pursuant to the plain meaning of § 1231(a)(5). See 8 U.S.C. § 1231(a)(5).

Under § 1231(a)(5) an alien, like petitioner here, who illegally reenters the United States after having been removed under a previous order of exclusion shall be removed from the United States at any time after the reentry by reinstating the

---

[11]Respondent again notes that, to the extent petitioner is challenging the validity of his reinstatement order, such a challenge is not properly before this Court. That is, such a challenge can only be brought on a Petition for Review at the Court of Appeals and is limited to 8 C.F.R. § 241.8(a)(1) - (3). See 8 U.S.C. § 1252(g).

prior order.  See 8 C.F.R. § 241.8(a).  However, petitioner can only challenge whether the reinstatement order was properly entered.  He cannot, however, challenge the underlying order of deportation.  See Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 295 (5th Cir. 2002); Gomez-Chavez v. Perryman, 308 F.3d 796 (7th Cir. 2002); see also 8 U.S.C. § 1231(a)(5).

The reinstatement procedure is limited in scope and thus does not require elaborate procedures.  The INS must determine only (1) the identity of the alien, (2) whether he was subject to a prior removal order, and (3) the terms on which he left and reentered the country.  See 8 C.F.R. §241.8(a)(1)-(3).  Because petitioner does not dispute that these three requirements were met, he is removable under his previous order of exclusion and deportation in accordance with § 1231(a)(5).  See 8 C.F.R. § 241.8(c).  Consequently, under 8 U.S.C. § 1231(a)(5), petitioner is not eligible for, and may not apply for, any relief under this chapter, i.e., adjustment of status.[12]

---

[12]Moreover, even though petitioner is statutorily ineligible to adjust his status stateside there are procedures in place permitting him to apply in Yugoslavia.  He would require a waiver for reentry into the United States at the time he filed a new application to adjust his status.  This is so because he would be barred from reentry into the United States for five years under 8 C.F.R. § 212.2(a).  Specifically, 8 C.F.R. § 212.2 permits petitioner to request permission to reapply for entry in conjunction with his application for adjustment of status.  This request can be made by filing an application for permission to reapply by using Form I-212.  See 8 C.F.R. § 212.2(e).  Consequently, petitioner can obtain the relief he seeks once back in Yugoslavia.  The fact that he can not obtain this waiver and

Petitioner, almost three years later, seeks an order from the Court that, not only was he eligible to adjust his status when he filed his I-485 application in 1999, but that now it should be adjudicated nunc pro tunc. This is so because petitioner presently cannot file a renewed application to adjust status nor is he eligible for any relief because his prior order of exclusion and deportation has been reinstated under 8 U.S.C. § 1231(a)(5).

Petitioner cites <u>Hernandez v. Reno</u>, 86 F. Supp.2d 1037 (W.D. Wa. 1999) in support of his position that he is eligible to adjust his status. However, a close reading of <u>Hernandez</u> reveals that it provides little support for the relief sought by petitioner.

In <u>Hernandez</u>, the alien was ordered deported by the INS in 1992 for entering the United States without inspection. Shortly thereafter he illegally reentered the United States and in August of 1997 he married a United States citizen. The alien's wife submitted an alien relative petition on his behalf with the alien filing an application to adjust his status pursuant to 8 U.S.C. §

---

statutory adjustment stateside does not alter this result.

In addition, there appears to be one other legitimate avenue available to petitioner. The Attorney General has the power, conferred by 8 U.S.C. § 1182(a)(9)(B)(v), to waive the statute's general prohibition upon readmission to the United States for aliens subject to an order of removal, if the person is the spouse or child of a U.S. citizen or lawful permanent resident alien, and if the refusal of admission "would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien." Although the Attorney General has sole and unreviewable discretion to grant any such waiver, petitioner is still able to apply for a waiver outside of the United States.

15

1255(i).  When the INS determined that the alien had previously been removed it issued a Notice of Intent/Decision to Reinstate Prior Order.  The alien thereafter submitted a Form I-212 application for permission to reapply for admission in the United States after deportation or removal.  Both the alien relative petition and I-212 application were approved but the application to adjust status was denied based on 8 U.S.C. § 1231(a)(5).  See Hernandez, 86 F. Supp.2d at 1038.

After concluding that application of § 1231(a)(5) did not constitute a retroactive application of the law, the Court analyzed the provisions of § 1255(i).[13]  The Court held that § 1231(a)(5) did not bar the alien's application to adjust status because he had applied before his previous order of removal was reinstated.  See id. at 1041.  As such, according to the Court, the alien had a clear entitlement to apply for adjustment of status under 8 U.S.C. § 1255(i).  See id.

The reasoning of Hernandez is not controlling authority and for that reason alone should not be followed by the Court.  To the extent the Court finds the holding in Hernandez instructive, Respondent maintains that the decision is contrary to the plain

---

[13]Respondent raised to petitioner's counsel and the Court the potential issue regarding the retroactive application of § 1231(a)(5) to petitioner because initially it appeared that he illegally reentered the United States in January, 1997, prior to the April 1, 1997 effective date of § 1231(a)(5).  Petitioner's counsel, however, represented to the undersigned that petitioner illegally reentered the United States in January, 1999.

meaning of 8 U.S.C. § 1231(a)(5).  That is, the statute is clear that any alien who illegally reenters the United States having been previously removed "is not eligible and may not apply for any relief," including adjustment of status.  See 8 U.S.C. § 1231(a)(5) (emphasis added).  The fact that petitioner filed an application for adjustment of status pursuant to § 1255(i) prior to the reinstatement order is of no consequence under a plain reading of the statute.  The statute plainly bars an alien from applying for any relief.  In addition, the statute flatly states an alien is not "eligible" for any relief.  Thus, even assuming petitioner's application occurred before the reinstatement order, the statute still bars his eligibility for any relief once the prior order is reinstated.

Nonetheless, even assuming Congress intended § 1255(i) to be a limited exception to § 1231(a)(5), (which Respondent maintains it did not), the reasoning of Hernandez does not support petitioner's request for relief in this case.  First, in Hernandez, the alien's application for adjustment of status was denied based on § 1231(a)(5).  See Hernandez, 86 F. Supp.2d at 1038.  Here, petitioner's application was initially terminated in May, 2001, for reasons unrelated to the November 29, 2002, reinstatement order.[14]

---

[14]Respondent notes that, even under the reasoning of Hernandez, petitioner is now barred from renewing his application to adjust status because of the statutory bar for any relief contained in § 1231(a)(5).

However, the Amended Decision did deny petitioner's application to adjust status based on § 1231(a)(5). Second, the alien in Hernandez, obtained a Form I-212 waiver of inadmissibility under 8 U.S.C. § 1182. See id. at 19041, n.3. Here, petitioner has not obtained a Form I-212 waiver waiving the consequences of his previous exclusion and deportation, or for any other potential basis of inadmissibility under § 1182. As previously discussed, it was, and is petitioner's burden to show that he satisfied the requirements of 8 C.F.R. § 245.10(b)(1) - (7). However, based on the present record before the Court he has failed to meet that burden.

Petitioner's reliance on Chacon-Corral v. Weber, Civil Action No. 03-K-132 (D. Colo. April 24, 2003) is likewise misplaced. Again, a close reading of Chacon-Corral reveals that it provides little support for petitioner.

In Chacon-Corral, the alien was ordered deported by the INS in 1997 as part of group deportation proceeding. Shortly thereafter he illegally reentered the United States in early 1998 and in February 2000 he married a United States citizen. In November 2000, the alien's wife submitted an alien relative petition on his behalf with the alien filing an application to adjust his status pursuant to 8 U.S.C. § 1255(i). The INS accepted both applications but during the course of a routine interview in December 2002 regarding his application to adjust status, the INS determined that

the alien had been previously deported.  As a consequence the INS denied the alien's application for adjustment of status as well as his I-212 waiver based on his prior deportation.  The INS then issued a notice of intent/decision to reinstate the prior deportation order.

After concluding that there was jurisdiction, the Court held that the prior 1997 deportation order was unconstitutional and thus there was no valid order to reinstate under 8 U.S.C. § 1231(a)(5). Specifically, the Court concluded that the alien's entire deportation process–which only took ten days–was rife with due process concerns, i.e., the alien was not informed of his right to counsel until the eve of his deportation hearing which was followed by a group deportation hearing without any legal counsel.  In addition, the Court explained in dicta that, even if the prior deportation order was valid, it had concerns regarding the constitutionality of 8 U.S.C. § 1231(a)(5) being applied to that particular alien.  However, the Court refrained from deciding that issue based on its finding that 8 U.S.C. § 1231(a)(5) did not apply to the alien.  Consequently, Chacon-Corral did not hold 8 U.S.C. § 1231(a)(5) unconstitutional.

Again, like the Hernandez decision, the reasoning of Chacon-Corral is not controlling authority and should not be followed by the Court.  To the extent the Court finds the holding in Chacon-Corral instructive, Respondent again maintains that the decision is

contrary to the plain meaning of 8 U.S.C. § 1231(a)(5). That is, the statute is clear that any alien who illegally reenters the United States having been previously removed "is not eligible and may not apply for <u>any</u> relief," including adjustment of status. <u>See</u> 8 U.S.C. § 1231(a)(5) (emphasis added). The fact that petitioner filed an application for adjustment of status pursuant to § 1255(i) prior to the reinstatement order is of no consequence under a plain reading of the statute. The statute plainly bars an alien from applying for any relief. In addition, the statute flatly states an alien is not "eligible" for any relief. Thus, even assuming petitioner's application occurred before the reinstatement order, the statute still bars his eligibility for any relief once the prior order is reinstated.

Even assuming Congress intended § 1255(i) to be a limited exception to § 1231(a)(5), (which Respondent maintains it did not), the reasoning of <u>Chacon-Corral</u> does not support petitioner's request for relief in this case. First, in <u>Chacon-Corral</u>, the alien's application for adjustment of status and Form I-212 waiver were denied based on § 1231(a)(5). <u>See</u> <u>Chacon-Corral</u>, at 3-4. Here, petitioner's application was terminated in May, 2001, for reasons unrelated to the November 29, 2002, reinstatement order.[15] Moreover, because there is no evidence petitioner has an I-212

---

[15] However, the Amended Decision did deny petitioner's application to adjust status and I-212 waiver based on § 1231(a)(5).

waiver regarding his previous exclusion and deportation he cannot show that he is eligible to adjust his status pursuant to 8 C.F.R. § 245.10(b)(1) - (7). As such, he is not eligible to adjust his status independent of the reinstated order.

Finally, in <u>Chacon-Corral</u>, the Court concluded that the alien's prior deportation order was invalid because of various Fifth Amendment concerns including lack of counsel and an uninformed waiver of his right to appeal. In the present case, petitioner was represented by able counsel at his former exclusion proceeding before an immigration judge and the Board of Immigration Appeals. Therefore, petitioner received due process and any claim to the contrary now is disingenuous and unsupported by the record.

The government's interests here are paramount. Congress has enacted a broad statute designed to expeditiously remove illegally reentering aliens, and has granted the Attorney General the authority to remove such aliens at "any time after the reentry." 8 U.S.C. § 1231(a)(5); <u>see</u> <u>Fiallo v. Bell</u>, 430 U.S. 787, 792-93 (1977). Congress' strong interests in enacting this statute are evident by comparing it to its predecessor at former Section 242(f) of the INA, 8 U.S.C. § 1252(f) (1994). Section 1252(f) provided a mechanism by which the Attorney General could reinstate an order of deportation against an illegally reentering alien but it did not preclude applications for relief. Nor did it bar review of the underlying order. Additionally, former Section 1252(f) permitted

reinstatement of only certain deportation orders, and did not apply to exclusion orders.  Perhaps the most significant difference is that aliens charged under the former provision were placed in immigration proceedings before an immigration judge (with a right to appeal to the Board of Immigration Appeals) to go through the whole cumbersome process again.  8 C.F.R. § 242.23 (1994); <u>see Gagliano v. INS</u>, 353 F.2d 922, 928-29 (2d Cir. 1965).  In essence the former statute was largely ineffective and seems to have fallen into desuetude before its repeal.  Section 1252(f) was repealed with the passage of IIRIRA.

Congress therefore enacted Section 1231(a)(5) to address the widespread problem of illegal reentry and to provide an expeditious removal process for aliens who enter illegally after previously having been removed.  <u>See Castro-Cortez v. INS</u>, 239 F.3d 1037, 1054 (9th Cir. 2001) (Fernandez, J., dissenting) ("In an attempt to correct that problem, Congress took an existing concept and expanded it."); H. Jud. Comm. Rep., No. 104-469(I) at 13, 104th Cong., 2d Sess. (1996) (<u>available at</u> 1996 WL 168955 at 45) (if "[a]liens who are ordered removed . . . seek reentry they are subject to *immediate* removal under the prior order") (emphasis added).  The government's strong interest in the "immediate removal" of such aliens would be frustrated by prolonged hearings before an immigration judge.

Furthermore, requiring the government to place aliens into

formal proceedings over and over again each time they illegally enter the country inflicts a substantial hardship on the government by draining much-needed resources. See INS v. Legalization Assistance Project of the Los Angeles County Federation of Labor ("LEAP"), 510 U.S. 1301, 1306-07 (1993) (noting the "administrative burden" that a stay would impose on the INS and finding that the equities tip in favor of the government); H. Jud. Comm. Rep., No. 104-469(I), (available at 1996 WL 168955 at 373) (repeated illegal reentries "add to the enforcement burdens of the INS"); id. (available at 1996 WL 168955 at 374) (emphasizing the "costs associated with apprehending and deporting an alien" who has illegally entered).

The government also has a particularly strong interest in deterring aliens from repeatedly entering the United States illegally. See Alvarenga-Villalobos v. Ashcroft, 271 F.3d 1174 (9th Cir. 2001) (upholding regulation that precludes deported aliens from applying for discretionary relief and reasoning that "the government has a legitimate interest in discouraging aliens who have already been deported from illegally reentering . . . . "). Indeed, that is precisely why Congress enacted a statute specifically targeting such aliens in the first place. Aliens who "cross into the United States over and over" threaten the national sovereignty. See H. Jud. Comm. Rep., No. 104-469(I) at 155; Landon v. Plasencia, 459 U.S. 21, 34 (1982) (government has a weighty

interest in the "efficient administration of the immigration laws at the border," and "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature").

In sum, the Court should permit execution of petitioner's reinstatement order in light of the plenary power of Congress in the immigration area and the compelling government interests in enacting the reinstatement statute.

## III.   Petitioner's International Law Claim Is Not Reviewable By This Court.

Petitioner now claims for the first time that his removal would violate various provisions of an international treaty.  More specifically, petitioner asserts that "pursuant to the International Covenant on Civil and Political Rights ("ICCPR"), the [INS] is prohibited from repatriating petitioner without giving due consideration to the devastating effect that it would have on his family."  (See Petitioner's Memorandum of Support at 26-29)  This claim is not reviewable by the Court and thus should be dismissed.[16]

First, because the ICCPR is not a self-executing treaty this Court does not have jurisdiction to consider claims arising out of alleged violations of the ICCPR.  The ICCPR was adopted by the

_____

[16]Notably, although the Court does not have jurisdiction to review this claim, there is nothing in the record to support petitioner's contention that his familial situation was not evaluated by the INS.

United Nations General Assembly on December 16, 1966, and entered into force on March 23, 1976. Statement of Senator Claiborne Pell, Chairman, Senate Foreign Relations Committee, 138 Cong. Rec. S4781-01, 1992 WL 65154. The treaty was ratified by the United States on September 8, 1992, Taveras-Lopez v. Reno, 127 F. Supp. 2d 598, 608 (M.D. Pa. 2000), but with a number of reservations, understandings and declarations. 138 Cong. Rec. S4781, S4783. The most important declaration in this case is "[t]hat the United States declares that the provisions of Articles 1 through 27 of the [ICCPR] are not self-executing." 138 Cong. Rec. S4781, S4783.

For a treaty to confer rights enforceable by private parties it must be self-executing - - i.e., a treaty which requires no legislation to make it operative. Frolova v. Union of Soviet Socialist Republics, 761 F.2d 370 (7th Cir. 1985). If a treaty is not self-executing, "it must be implemented by legislation before it can give rise to a private right of action enforceable in a court of the United States." Jama v. I.N.S., 22 F. Supp. 2d 353, 362 (D.N.J. 1998) (citing Dreyfus v. Von Finck, 534 F.2d 24 (2d Cir. 1976), cert. denied, 429 U.S. 835, (1976), disavowed on other grounds, Filartiga v. Pena-Irala, 630 F.2d 876 (2d Cir. 1980)).[17]

---

[17] "A United States treaty is a contract with another nation which under art. VI, cl. 2 of the Constitution becomes a law of the United States. It may also contain provisions which confer rights upon the citizens of one of the contracting parties which are capable of enforcement as are any other private rights under the law. In general, however, this is not so. Rarely is the relationship between a private claim and a general treaty

"Federal courts have subject matter jurisdiction over all civil actions arising under . . . treaties of the United States. 28 U.S.C. § 1331.  An action arises under a treaty only when the treaty expressly or by implication provides for a private right of action.   The treaty must be self-executing; i.e., it must prescribe[ ] rules by which private rights may be determined." Columbia Marine Services, Inc. v. Reffet Ltd., 861 F.2d 18, 21 (2d Cir. 1988) (citing Dreyfus, 534 F.2d at 30; Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 808 (D.C. Cir. 1984)); see also Igartua De La Rosa v. United States, 32 F.3d 8, 10 n.1 (1st Cir. 1994)(ICCPR not self-executing; "the ICCPR . . . does not purport to expressly or implicitly create a private right of action for violations of those rights."). Cf. Wang v. Ashcroft, 320 F.3d 130 (2d Cir. 2003) (holding that habeas review of Torture Convention [18] claims is

---

sufficiently direct so that it may be said to 'arise under' the treaty as required by art. III, s 2, cl. 1 of the Constitution. It is only when a treaty is self-executing, when it prescribes rules by which private rights may be determined, that it may be relied upon for the enforcement of such rights."  Dreyfus, 534 F.2d at 29-30.

[18]   The United States is a signatory and ratified party to the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention Against Torture" or "CAT"), 1465 U.N.T.S. 85, G.A. Res. 39/46, 39th Sess., U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984). Article 3 of the Convention provides, in relevant part, that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture."  Torture Convention, Art. 3, S. Treaty Doc. 100-20, 100th Cong., 2d Sess. 20 (May 23, 1988).  Congress implemented Article 3 of the Torture Convention in the Foreign Affairs Reform

permitted even though treaty is not self-executing because Congress enacted legislation implementing Article 3 of the treaty).

It is clear that Congress specifically dictated that the ICCPR is not self-executing and, as such, no private right of action was created, or exists, for petitioner.  Accordingly, this Court has no jurisdiction to review petitioner's claim asserted under the ICCPR.

## CONCLUSION

For all of the foregoing reasons petitioner's writ of habeas corpus should be dismissed as a matter of law.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

By: _____
DOUGLAS P. MORABITO
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct20962
157 Church Street, 24th Floor
New Haven, CT 06510

_____

and Restructuring Act of 1988 ("FARRA").   Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681-822 (Oct. 21, 1998) (codified as Note to 8 U.S.C. § 1231).

27

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent via first class overnight mail, February 27, 2004, to:

Theodore N. Cox, Esq.
401 Broadway, Suite 1802
New York, New York 10013
Fax: (212)925-5188


By: _____
        DOUGLAS P. MORABITO
        ASSISTANT UNITED STATES ATTORNEY